Good afternoon, may it please the court. I'm Joseph Edmonds with Gibson Dunn, appearing pro bono on behalf of plaintiff and appellant Martha Winkler. I would like to reserve four minutes for rebuttal. Ms. Winkler is a single grandmother who was almost killed by a Phoenix police officer who arrested her for misdemeanor trespassing. There are three main problems that require that she be given a new trial on her excessive force and wrongful arrest claims. First, the court's excessive force instruction was wrong for the simple reason that Supreme Court case law requires that the jury consider... Ms. Edmonds, get closer to the microphone if you would, I'm having difficulty hearing you. I apologize, is this better? Yeah, yeah. The court's excessive force instruction was wrong for the simple reason that Supreme Court case law requires that the jury consider the totality of the circumstances. Here the judge instructed the jury not to consider some of the circumstances which were highly relevant and legally required. Second, the district court should have granted Ms. Winkler's Batson challenge because defense counsel struck the only black prospective juror from the panel and misrepresented what that juror said during voir dire as a basis for that strike. Third, the court applied the wrong legal standard in granting judgment as a matter of law on the wrongful arrest claim by stating that an arrest does not have to be reasonable and by weighing witness credibility in the jury instruction error on excessive force. The district court's decision to depart from the model instructions and give a supposed provocation instruction requires reversal under the de novo standard because it misstates controlling law and also because it creates an irreconcilable conflict with the correct model instruction. Counsel, why is it de novo? As I read it, defense counsel did not object to the language of the curative instruction. So defense counsel, sorry plaintiff's counsel, objected to the substance of the instruction on two different occasions. Once at the end of plaintiff's counsel's closing remarks on excerpt of record page 912 and then again after defense counsel had presented her closing arguments. But defense counsel never, sorry plaintiff's counsel never objected to the language of the curative instruction, correct? So plaintiff's counsel did object to the language of the curative instruction. The second time that it was discussed, the judge proposed some language that he was considering and then plaintiff's counsel continued to disagree with the need for the instruction. Yeah, with a need for instruction that's different than than objecting to the language of the instruction. The key there is that agreeing to the form of an instruction, once an objection has already been overruled and heard, it does not waive the prior objections to that. That's the Medtronics case that we cite. That case involved very similar facts here where counsel argued about the need for the instruction with the court several times and then upon hearing the final instruction, having already objected, said something to the effect of that's fine or okay. The need to object or the need to state an objection, it's not the need to be obstructive. At some point after counsel has already made the record, there's no need to continue objecting. The argument that counsel made below is the same one that I'm making to you here today. On page 912 of the record, I want to hear, I want to read to you a where plaintiff's counsel says, I'm able to say, Officer Joe Espy, he accidentally said Winkler, is the one who caused this issue as it pertains to the traffic issue because he's the one, when she backed away from her, chased her into the street. And then going down lower on that page, he says, you already have, we have the instructions. I followed the instructions to the T. Plaintiff's counsel submitted proposed instructions that did not include this erroneous provocation instruction and so that also weighs in favor of. Wait, as part of the curative instruction or just part of the general jury instructions? As part of the general jury instructions. I guess my problem was, how was the judge to know that you had, that Miss Winkler had an objection to, you know, it sounds like the biggest issue is the phrase or created the need to use force. Is that right? That is certainly one of the big issues because that phrase directly conflicts with element 7 of the model instruction. And so that is, that is certainly the most problematic. But, right, so how would the district judge know that? Well, I guess the key here is he would know it because plaintiff's counsel said, we have the instructions. The instructions are what you need. Given the demands of a trial that's going on, this is, you know, in a break, the jury's impaneled, they're waiting. I don't think that it was, it was necessary under the Ninth Circuit's case law to say more than that. He said, we have the instructions. The instructions say the totality of the circumstances. That is what should be considered. Under plain error review, does your, does your party lose? Is your, your plaintiff lose? Is the sprinkler lose? Absolutely not. Ninth Circuit case law is pretty clear that a conflict of law alone is enough to establish plain error review. Any judge who has read the instructions would have known and would have seen that this is plainly erroneous. I am at once telling the jury they have to consider the totality of the circumstances, including which party is more at fault, which party created this simultaneously telling them not to consider the totality of the circumstances because it should not consider, you know, which party created the need to use force. That, that is not supported by any case law. But, but the case law, Mendez does support the statement that the jury could not consider whether an officer provoked a plaintiff to resist arrest, right? It does not, your honor. Uh, the holding in Mendez was very narrow. Um, the, the footnote, it's an unnumbered footnote that clarifies the scope of the holding in Mendez. It says that all we are holding here is that where a use of force has been held to be reasonable under the Graham factors, that a court cannot depart from that and hold that it was an actionable excessive force claim outside of the Graham factors by looking to some prior fourth amendment violation. Here, that's not what Ms. Winkler was arguing. She was arguing that under the Graham factors, this was an excessive use of force. This was unreasonable. But didn't Mendez stand for, Mendez stand for that you can't use a false arrest or a claim, the facts of the false arrest for an excessive force claim? Not, not at all, your honor. Uh, all it, all it held was that that alone cannot circumvent the Graham factors. Um, if you look at the way that the court explains the Ninth Circuit's provocation rule, um, let, let me read it for you here, um, because I think it's, I think it's very important. The court said the Ninth Circuit's provocation rule comes into play after a judgment was reasonable under Graham. Here, there has been no judgment that the force was reasonable under Graham. Um, this was an entirely separate analysis from Graham. But how does that work? I mean, it's a jury instruction, so the jury has to determine, the judge is not going to know whether or not the jury believes that the, that the, the force was reasonable until after the verdict. So, I'm not sure how, how you're supposed, what, what does that instruct us? Well, the, I guess the, any risk that the jury could have based an excessive force verdict on the, the wrongful arrest was taken out by, by the court's corrective instruction immediately after plaintiff's counsel's closing argument, where he said, you know, basically word for word, the lawfulness of this arrest is not an issue. The So, there, there was zero risk here that, assuming the jury followed the instruction, which they're presumed to do, that the jury could find that even though the, the plaintiff had not satisfied the Graham factors, that the unlawfulness of the decision to arrest her could supplant that entire Graham framework. So, you agree then that the jury could not consider the lawfulness of the arrest in, in deciding the excessive force claim? So, I, I, we're not disputing that that was a given the Rule 50 ruling. The court, at that point, before it had, before it instructed the jury, had dismissed the wrongful arrest claim. So, what's the, what's the material distinction between that instruction and the curative instruction that was given? Well, the curative instruction says that there are factors the court can't, that the jury can't consider. It says that whether the created the need to use force, that is, that is far broader than the decision to arrest. Here, the decision to arrest was not the only thing that had created the need to use force. It was the way that the arrest happened. Assuming, assuming probable cause, you know, assuming that there was every right for him to arrest her, did he need to aggressively approach her? Because he said that she was backing away, and he was afraid that she was going to walk backwards out of the stall of the parking lot into the, you know, where cars could drive. And so, he said, and because she was standing out there, I had to, I had to do this armbar on her. I had to take her down. And so, even if he had probable cause to arrest, he could have said, you know, ma'am, you're under arrest. I need to arrest you. You know, you can't be here. Counselor, if I were, if I were to agree with you that that statement is broader than the need to arrest or the probable cause to arrest, but under, if it should reverse the district court's judgment here? I think it is, your honor. Totality of the circumstances and the factors that are listed have always been a non-exhaustive list. Anytime you're giving a jury an instruction to not consider something, that should raise all kinds of red flags. The one thing that can't be considered is the officer's mental state, and that is baked right into the model instruction. Totality means totality. And here, there was no reason... Wasn't that alleviated by the district court referencing those totality of the circumstances instructions right before he says that statement, which is ambiguously right or wrong? Well, the Ninth Circuit case law on that says that when you have conflicting instructions, you can't presume that the jury followed the serious and why it has been held to be plain error. And to me, that... Was that case an under plain error? One of the cases was, your honor. If you have it, I love it, but if not, don't worry about it. I do. It is Citrus Eldorado v. Stearns. And we'd also cite to Bearchild v. Cobham. That was not a conflict issue, but that also does show the point that instructional errors... Just given the importance to the jury process of having correct instructions, that it is within the realm that these can be plain error here, and that it can meet that high standard. Do you want to reserve the rest of your time for rebuttal? Yes, your honor. Thank you. Thank you. May it please the court. My name is Kathleen Winnicki, and I serve under the jurisdiction of Officer Gillespie. You also tried the case, right? That's correct, your honor. The district court properly granted the Rule 50 relief because Officer Gillespie had probable cause to arrest her, based on the undisputed evidence that Officer Gillespie had formulated probable cause based on the information in his CAD, on his computer-aided dispatch information in his car, and corroborated by his clerks. And the district court properly issued a curative instruction after Winkler's counsel undermined that ruling in the arguments that he made during closing argument. And her case was heard by a jury of her peers with no discriminatory motives at play. I want to address first the jury instruction, which was a curative instruction. The order of the trial was after the close of the defendant's case, and there was no rebuttal, the court instructed the jury based upon the agreed-upon instructions of the parties. That instruction included the Graham factor instruction, which is at ER 9998, which are the 11 factors that the jury could consider in deciding the closing argument that I raised the issue with the court, that improper arguments were made based on undermining the false arrest JMOL ruling, that we needed a curative instruction, as well as what we believed was a violation of the provocation rule, which was reversed, this court's provocation rule, which was I didn't argue provocation, which is belied by the record, and then the court disagreed and said I need to instruct the jury that false arrest is no longer in play. The court previously had only said there were two counts, there's only one left. The Rule 51 requires a specific objection to an instruction. I would point out for the record that when the court proposed the curative instruction, the only objection about the language was made by the defendant, where the defendant proposed additional language. At no time did the plaintiff ever suggest an alternative instruction or suggest that there was specific problems with the language, and in particular, this conflict issue that we're now arguing about was never raised before the trial court. The argument that the instruction proposed is conflicting with number seven of the gram factor in ER 999 was never raised before the trial court. To give the trial court, who is in the best position to fix it, was never given, and that is a violation of Rule 51. That's important because this court has said over and over again, we are going to The Medtronic's case that the plaintiff cites says there may be exceptions to strict enforcement of Rule 51, but it's only under three circumstances. One, when throughout the trial, the party argued the disputed matter with the court. It is clear from the record that the court knew the party's grounds for disagreement with the instruction, and the party offered an alternative instruction. That is not present in this record. The record regarding the curative instruction consists of about two or three pages, and the plaintiff did not say, other than his general objection, I don't think we need it here. So, can I ask a question? If that curative instruction, in adding that in, in what is required, and does it does it affect that instruction? If it's a curative instruction that misstates the law, how does that affect the outcome? Well, Justice, Judge Cardone, first, there is waiver because of Rule 51. But even notwithstanding that, the way the court worded the instruction, the court very cleverly looped back to the excessive force instruction, and said, ladies and gentlemen in the jury, go back to the excessive force instruction because you are to consider these 11 factors in determining the excessive force claim. So what I would suggest to the court is that what the court was doing was, these are the 11 factors you need to consider, but don't consider this. So in doing the instruction that way, it essentially cured any prejudice caused by the plaintiff's misapplication or misstatement of the law, and the court redirected the jury back to the appropriate law, as stated in the instruction, the Graham factors. So even if that language was a misstatement, I was not prejudicial or harmless, it was harmless, because it redirected the jury back to the Graham excessive force instruction. And you're saying that even though it's all contained in the same instruction, in other words, he directs them towards the Graham factors, and then the following sentence makes a misstatement of the law, and you think that the rest of that was cured. You're saying by his subsequent statement, he's cured them, even though in that instruction, he's saying two different things. Look at the Graham factors, but the jury should not consider whether the officer created the need to use force. Well, if I may, Your Honor, I don't believe that the statement in the Graham factor, that subsection seven, according to the notes in our model instruction, derives from Scott v. Harris, which was the police chase case, which talks about the number of lives at risk, motorist, pedestrian, police officers, and the party's relative culpability, which party created the dangerous situation, and which party is more innocent. That part of the Graham factor, both sides argued in the closing argument was, look, Officer Gillespie was trying to prevent Ms. Winkler from going out into the parking lot and being exposed to danger, and she was the one who created that, because she moved back when Officer Gillespie reached out for her hand. What we believe the plaintiff is doing here is conflating those two ideas. He's conflating the provocation rule, which was abolished in Mendez, and that relative culpability section of the excessive force by saying that the parties are free to argue, well, were there other factors involved in terms of what was going on in that situation? But Ms. Winkler, I'm having trouble with this. The language they added on, and which isn't disproved here, is, or created the need to use force. Now, once he tells the jury that you're not to consider whether the officer, Gillespie, created the need to use force, doesn't that knock out the whole issue of what force was excessive? I respectfully know, Your Honor, because that language was needed because of this court's ruling in Billington and Alexander, which in Mendez the court disproved, because remember the facts in Mendez was you can't use a bad All right, sorry about that. In Mendez, the issue was you can't use a bad constitutional violation to then condemn what would otherwise be a good constitutional use of force. And in Plaintiff's closing, what he tried to do was even though the court had ruled that the false arrest was a good arrest, it was a constitutionally good arrest, he suggested to the jury, this was a bad constitutional arrest, a bad constitutional claim, to then use that and say that conduct would otherwise invalidate a reasonable use of force because he created the need for that force by not having to arrest her. And I know it's somewhat convoluted, but if you had never had needed to arrest her, you never would have needed to use the force. But the ground factors, sorry, ground factors, why add that extra sentence? Because, Your Honor, of the first line on page 998 of the instruction, which says, in general, a seizure of a person is unreasonable under the Fourth Amendment, if a police officer uses excessive force in making a lawful arrest. And what the plaintiff did in his closing was say this was not a lawful arrest. That's what was wrong. What's the force referred to in the instruction, the curative instruction, created the need to use force? That seems broader than created the need to arrest the plaintiff. Well, in Mendez, and as was referred to in Billington, what would happen in these cases is that the tactics used by law enforcement, so for example, if they didn't create a perimeter or if they didn't effectively use other police tactics that ended up in a confrontation resulting in deadly force, for example, it was those tactics that would be criticized because it created then ultimately the need to use force, as opposed to, remember, Fourth Amendment jurisprudence tells us that it's that moment that force is used that is reviewed. That moment, either the trigger is pulled or the force is applied that is examined under the Fourth Amendment because it's a temporal proximity issue. What that force at that moment, because of the circumstances, and we don't go back and hindsight 20-20 guess. What the plaintiff was doing was saying, look at all these things he did. He should have talked to her. He should have done these things. That allows to judge based on 20-20 hindsight, as opposed to when he put his hand on her arm. So you construe created the need to use force is created the need to use force, which is broader than that, which is respectfully why it was the plainest burden under Rule 51 to point these things out to the judge to clear up these confused this confusion at the time. And that's what Rule 51 mandates. And this court has required strict enforcement of to eliminate these types of second guessing and confusion on appeal. I do want to also address the probable cause issue because the plaintiff has suggested the court was not aware that reasonableness is the standard. There's no question the court made an off comment or an offhand comment about reasonableness. But clearly the court understood that probable cause was a complete defense to this arrest. And that probable cause is viewed by what a reasonable officer knew under the circumstances. All of the evidence that Ms. Winkler wants this court to consider is what was in Ms. Winkler's mind, not what was in Officer Gillespie's mind and what he reasonably knew under the circumstances. Ms. Winkler says, but no one told me. But that's not the universe of information that Officer Gillespie knew when he came to the scene, when he spoke to the clerks. That universe of information told him there was a request to leave. It was denied. And that was sufficient probable cause to make the arrest. And that's what the court kept trying to explain to Ms. Winkler's counsel. I am not weighing the evidence. I am not applying an improper deferential standard. I'm simply applying the law as articulated by the Supreme Court on numerous occasions. Lastly, I want to just address the Batson challenge because the court in its determination applying the three step process in the end made the comment. And the court is in the best position to have done this based on its review of the demeanor and the conduct of the parties and counsel that there was an honest, an honest exercise of the strike here based on race neutral reasons. And although the Supreme Court in Perquette did not require it to be reasonably related to the issues in the case, but a review of this record clearly reveals that Ms. Winkler had some emotional disturbed issues. And so a person having some experience with social work was not a juror we wanted to accept on the jury. And that was a reasonably non-discriminatory reason to have exercised the strike. Keep in mind, we had 10 minutes. Even the judge said, I'm not going to hold you to whatever questions that you did or did not ask of the jury. And in fact, the officer Gillespie queried eight jurors in that 10 minutes. The plaintiff talked to four. So we did the best we could given the limitations we had. I see I'm out of time. I'm happy to answer any questions, but I thank you for your time and consideration today. Thank you, counsel. Mr. Edmonds. Here we go. Thank you, Your Honor. A few points to follow up on. So the court is correct that a curative instruction cannot mistake the law. Whatever the proper remedy here, if counsel did cross the line, which I don't think he did, but if he did cross the line and trying to re-argue the lawfulness of the arrest, the correct response to that by the district court can never be to misinstruct the jury on the law. If counsel thought it warranted a mistrial, she could have moved for a mistrial. That wasn't done. The curative instruction that was given here was more than ample. All of the concerns that she's raising about, you know, the jury could have been confused. They could have thought that this was an unlawful arrest. The jury, the court's instruction on that was extensive. This is not an unlawful arrest. The lawfulness of this arrest is not an issue. That's very clear on the record. That is all the correction that was needed. Also, Your Honor, going to the point of, you know, if the court were to apply plain error should be reviewed. This is the correctness of a jury instruction on a civil rights fundamental Fourth Amendment right. These are very important issues. This is exactly the type of issue that plain error review was meant to correct so that it's not repeated in the future. Your Honor, the footnote also in Mendez is very instructive. The court there was, again, clear that it was not ruling on whether prior unreasonable police conduct could be taken into consideration under Mendez. Sorry, under the Graham factors. That wasn't part of its decision. It absolutely did not reach that issue. It left open the idea that prior conduct could be considered under Mendez under the Graham factors. Your Honors, I would also counsel. Can I can I ask one question? The opposing counsel said that both sides argued in closing after this instruction about those other factors, such as the traffic situation. So doesn't that also diminish any prejudicial impact? And then when counsel argued precisely what you're saying, this instruction from it prohibited him from doing. Your Honors, I see I'm out of time, but I'd like to ask. The jury was instructed after all of the closing arguments were done. The jury is always to follow the instruction. And here you have conflicting instructions. You don't know which one they followed. They can't be presumed to follow the correct one. Your Honors, for these reasons, I'd ask the court to reverse. Thank you. Thank you, counsel. And thank you, counsel, for handling this matter pro bono for both of you. Very well argued. Thank you for appearing. This court is adjourned. I'm sorry, in recess until tomorrow at 2 p.m. This court for this session stands adjourned.
judges: Bea, Cardone, Bumatay